IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–02920–KMT

MATTHEW LEROY LAMANCE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

# ORDER

---

This matter is before the court on review of the Commissioner's denial of Plaintiff's application for Disability Insurance Benefits (DIB) and supplemental security benefits (SSI) under Title II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq*. Jurisdiction is proper under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2012, Plaintiff filed an application for DIB under Title II of the Act.[1] (Administrative Record ["AR"], Doc. No. 10, at 117-25.) Plaintiff claimed he became disabled in January 2011 due to syncope;[2] arthritis in his back, knees, and hands; and high blood pressure. (*Id.* at 44, 141.) Plaintiff was 30 years old at the time of the alleged onset of his disability. (*Id.* at 19, 44.)

---

[1] Plaintiff's SSI application is not included in the Administrative Record.
[2] "Syncope" is a loss of consciousness or a faint. *Whatley v. Colvin,* 528 F. App'x 884, 886 n.1 (10th Cir. 2013) (citing 20 C.F.R. Pt. 404, subpt. P, App. 1 § 4.00(F)(3)(b)).

After the state agency denied his claim (*id.* at 42-43), Plaintiff requested a hearing before an administrative law judge (*id.* at 76-77). A hearing was held on June 3, 2013, at which Plaintiff and an impartial vocational expert ("VE") testified. (*Id.* at 24-41.)

On June 18, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[3] (*Id.* at 10-20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 3, 2011. (*Id.* at 12.) At step two, the ALJ found that Plaintiff suffered from the following severe impairment: syncope. (*Id.* at 12-16.) At step three, the ALJ found that Plaintiff did not have an impairment that meets or medically equals the severity of one of the impairments listed in the Social Security regulations. (*Id.* at 16.)

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except unskilled, low stress work with no exposure to hazardous work settings."[4] (*Id.* at 16-19.) Based on this RFC, the ALJ found at step four that Plaintiff was unable to perform his past work as a flagger, repo man, maintenance mechanic, or operating engineer. (*Id.* at 19.) However, at step five, the ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, Plaintiff could

---

[3] The five-step process requires that the ALJ consider whether a claimant (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). The claimant has the burden of proof on steps one through four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] The court construes the ALJ's RFC conclusion to state that Plaintiff is limited to "unskilled, low stress work with no exposure to hazardous work settings," rather than he is "except[ed] from unskilled, low stress work with no exposure to hazardous work settings." (*See* AR at 16.)

perform jobs that exist in significant numbers in the national economy, including the representative occupations of (1) production assembler, (2) small parts assembler, and (3) food and beverage order clerk.  (*Id.* at 19-20.)  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to DIB or SSI benefits.  (*Id.* at 20.)

The Appeals Council denied Plaintiff's request for review on September 25, 2013.  (*Id.* at 1-5.)  Plaintiff then filed this action on October 25, 2013 seeking review of the Commissioner's determination.  (Compl., Doc. No. 1.)  Plaintiff's Opening Brief was filed on April 30, 2014 (Doc. No. 14), the Commissioner's Response Brief was filed on June 30, 2014 (Doc. No. 15), and Plaintiff's Reply Brief was filed on July 14, 2014 (Doc. No. 16).  Accordingly, this matter is ripe for the court's review and adjudication.  For the following reasons, the Commission's determination is REVERSED and REMANDED.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and briefs submitted by the parties.  In reviewing a final decision by the Commissioner, the role of the district court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standard." *Ricketts v. Apfel,* 16 F. Supp. 2d 1280, 1287 (D. Colo. 1998).  The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir.2004).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence requires "more than a scintilla, but less than a preponderance" of the evidence.  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

## ANALYSIS

### A.  *Whether the ALJ Erred in Discounting Dr. Vega's Opinion*

In May 2013, Jose Vega, Ph.D., conducted a mental health assessment of Plaintiff and diagnosed him with depressive disorder NOS (not otherwise specified), anxiety disorder NOS, and a GAF (Global Assessment of Functioning) score of 50-55. (AR at 309-314.) Dr. Vega also completed "Residual Functional Capacity Evaluation (Mental)" form addressing the limitations imposed by these mental impairments on Plaintiff's understanding and memory, concentration and persistence, social interaction, and adaptation. (*Id.* at 315-316.) Plaintiff argues that the ALJ incorrectly concluded that Dr. Vega's opinion was based only on "the statements made by the claimant." (Opening Br. at 25 (quoting AR 16).)

The court would be inclined to agree that the ALJ erred if he had rejected Dr. Vega's opinion solely because it was based only on the "statement made by the claimant." "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart,* 147 F. App'x 755, 759 (10th Cir. 2005). Thus, "[a] psychological opinion need not be based on solely objective 'tests'; those findings 'may rest on observed signs and

4

symptoms or on psychological tests.'" *Id.* at 759 (10th Cir.2005) (unpublished) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

However, the ALJ did not reject Dr. Vega's opinion only because they were based on Plaintiff's subjective reports. The ALJ also reject Dr. Vega's opinion because his assessment of Plaintiff's RFC was not consistent with the GAF of 50-55. (AR at 16.) The court finds that this was a legitimate basis for rejecting Dr. Vega's opinion. A GAF score between 51 and 60 equates to "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." *Keyes-Zachary*, 695 F.3d at 1162 n.1. Nevertheless, Dr. Vega opined in his RFC assessment that Plaintiff's mental impairments would impose *marked to extreme* limitations in a number of functional areas. (AR at 315-16.) Although Dr. Vega stated that his diagnosis and rating of severity of mental function was based on his clinical exam findings, there is no support for such marked to extreme limitations in his objective assessment. (*See id.* at 309-14.) Accordingly, the court finds that the ALJ's rejection of Dr. Vega's opinion was based on substantial evidence.[5] *White v. Barnhart,* 287 F.3d 903, 907-08 (10th Cir. 2002)

---

[5] Realistically, the ALJ should have rejected Dr. Vega's assessment of the limitations posed by Plaintiff's mental impairments through his RFC analysis rather than at step two. However, to the extent this was error, the court finds it was harmless. An ALJ's failure to make specific findings regarding the severity of a claimant's alleged impairments at step two is harmless where the ALJ discusses in detail the effects of each alleged impairment at other steps. *Martinez v. Apfel,* 289 F. App'x 296, 299 (10th Cir. 2008). Here, the ALJ further addressed Plaintiff's mental impairments in his RFC analysis. (AR at 19.) Moreover, the court can reasonably read the ALJ's assessment of Dr. Vega's opinion at step two to constitute a rejection of those findings in the RFC assessment that preceded the step four and step five analyses. *Keyes-Zachary,* 695 F.3d at 1166 (where the court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.")

(discrepancy between treating physician's very restrictive functional assessment and examination notes was a legitimate basis for rejecting that opinion).

Therefore, the court finds no error in the ALJ's evaluation of Dr. Vega's opinion.

### B.    *Whether the ALJ erred in Rejecting the Opinion of Timothy Hirsch, P.A.*

Plaintiff argues that the ALJ erred in giving Timothy Hirsch, P.A.'s opinion regarding the limitations imposed by his syncope "little weight." (Opening Br. at 16-19.) Here the court agrees.

As an initial matter, the court acknowledges that Mr. Hirsch, as a physician's assistant, is not an "acceptable medical source" under the Social Security regulations. "Acceptable medical sources include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists." *Frantz v. Astrue,* 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 404.1513(a)). Only these "acceptable medical sources" can "provide evidence to establish the existence of a medically determinable impairment, . . . provide medical opinions, and . . . be considered treating sources." *Id.* (citing 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 404.1527(d)).

Nevertheless, the Commissioner has recognized that given the realities of modern-day managed healthcare,

> medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); *see also Frantz,* 509 F.3d at 1301 (quoting 20 C.F.R. § 404.1513(d)) ("These sources, as well as other non-medical sources, may provide evidence to 'show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work.'"). Accordingly, a physician's assistant's opinion still must be considered, applying the same factors as are generally used to assess treating source opinions. SSR 06-03p at *4. *See also* 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6); *Frantz*, 509 F.3d at 1302. These factors include: (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the provider's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (5) the specialization of the provider. 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6); SSR 06–03p, 2006 WL 2329939, at *4–5. The regulations do not require that the ALJ expressly discuss each factor. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.2007).

Here, the ALJ neither discounted Mr. Hirsch's opinion because he was not an acceptable medical source, nor did he reject Mr Hirsch's opinion because he was not permitted to establish the existence of a medically determinable impairment—indeed, the ALJ explicitly concluded that Plaintiff's syncope constituted a severe impairment. (AR at 12.)

Instead, the ALJ rejected Mr. Hirsch's assessment that Plaintiff suffered from a condition that causes him to pass out (syncope) solely because it was "based only on the claimant's statements that are not supported by <u>any</u> objective findings." (*Id.* at 15, emphasis added.) This conclusion appears to be based on Mr. Hirsch's statement that "[a]ll tests [of Plaintiff's syncope] have been objective." (*Id.* at 308.) However, notwithstanding this statement, there is objective

7

evidence of Plaintiff's syncope in the record.  More specifically, although the vast majority of laboratory tests into Plaintiff's syncope came back normal,[6] Plaintiff was placed on an event monitor for a month in late 2012, and on January 2, 2013 it was reported that Plaintiff had suffered two syncopal episodes during that time.  (*Id.* at 288).  There is no suggestion in the record that the syncope episodes reported by the event monitor were subjective or could have somehow been feigned.

Accordingly, the court finds that the ALJ's finding that there was no objective evidence to support Mr. Hisch's opinion was inconsistent with the record and thus not based on substantial evidence.  Therefore, the court finds that the ALJ improperly rejected Mr. Hirsch's opinion on that basis.

Because the court finds that remand is appropriate to correct this error, the court need not address the remaining allegations of error.  *See Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003); *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1225 (D. Colo. 2012).  Indeed, because Plaintiff's remaining arguments all pertain to the ALJ's assessment of his syncope, the remaining alleged errors may be impacted on remand.

Accordingly, it is

ORDERED that the Commissioner's determination is REVERSED and this case is REMANDED to the Commissioner for further proceedings consistent with this order.  The Clerk

---

[6] *See, e.g.,* AR at 220 (chest x-ray), 221, 238 (Holter monitor) 247 (electrocardiogram), 255, 265 (tilt table test), & 303-305(CT angiogram and Carotoid ultrasound).

of Court shall enter judgment in accordance herewith. Any request for costs or attorneys' fees shall be made within 14 days of the date of this Order.

Dated this 30th day of March, 2015.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge